R. P. RUSSELL *vs.* ST. PAUL, MINNEAPOLIS & MANITOBA RAILWAY COMPANY.

February 14, 1885.

**Condemnation for Railway Purposes—Evidence of Market Value.**— Any existing facts entering into and affecting the market value of land in the public and general estimation, and tending to influence the minds of sellers and buyers, may properly be considered by the jury on the question of its value.

**Same — City Lot Contiguous to Existing Railway Station — Depot Grounds—Increased Value from Location.**—Where, in condemnation proceedings by a railway company to acquire title to a city lot, it appeared that such lot was bounded on three sides by depot grounds, in a large city, on the line of a railroad established and in operation, and there was evidence tending to show that the land, at the time of its appropriation, was conveniently located for a track connection with such railway, *held*, that evidence was further admissible tending to prove that such lot was at that time an eligible site for warehouse, elevator, or manufacturing purposes, by reason of such location; that proximity to the railroad tended to enhance the value of lands in the vicinity; and that there was an actual demand for the same for such purposes, and for business requiring convenient access to the railroad for the receipt and shipment of freight; the only issues, upon the evidence, being the value of the lot, and the practicability of furnishing track connections.

**Same—Value with Reference to Possible Future Changes.**—An issue being made as to the practicability of extending a side track to the land in question at the time it was taken, it was error to instruct the jury that they were permitted to consider the possibility of future changes in the plans of the company, not then in contemplation, and that such privilege might at some time be granted. Such considerations were too remote and speculative.

**Practice — General Exception to Charge.**—A general exception to instructions of the court on a particular branch of a case, part of which are proper, is not available on appeal.

Condemnation proceedings. The plaintiff having appealed from the award of the commissioners to the district court for Hennepin county, a trial was had in the district court for Anoka county, be-

fore *Koon*, J., and a jury, and plaintiff had a verdict for $13,800. Defendant appeals from an order refusing a new trial.

*R. B. Galusha* and *Benton & Roberts*, for appellant.

*Wilson & Lawrence*, for respondent.

VANDERBURGH, J.[1]   The land appropriated by the railway company in these proceedings is one entire lot belonging to plaintiff, in the city of Minneapolis, and lying adjacent to the right of way and depot grounds of the company in the city.   The only question is the amount of plaintiff's damages, being in this instance the value of the lot in controversy.   It is admitted that the company owned the land adjoining on the south, east, and west, the lot being 160 feet in length by 50 feet in width.   The evidence in plaintiff's behalf tended to show that proximity to the railroad track in that vicinity enhanced the value of lands in the general estimation of men owning and dealing in such property, and that it was particularly in demand for warehouse and elevator purposes; and the witnesses, in their estimate of the market value of this lot, considered its adaptation to and availability for such purposes on account of its contiguity to the railroad.   It was objected, however, by the defendant, that there was no warrant for such estimate, and that defendant is under "no obligation to give the owner any more privileges than it gives the general public, and that there can be no special value assessed upon the land on account of its contiguity to defendant's land."

The court did not, however, permit the evidence to be received upon the assumption that track facilities had been secured, but the witnesses evidently considered the favorable location of the lot for the convenient receipt and shipment of freight to and from the railroad track.   The defendant's evidence did not tend to show that such privileges would in any case be arbitrarily withheld, or that the company were not ready to afford such facilities, whenever practicable or convenient, to accommodate the owners of warehouses, elevators, and manufactories, situated along their track, furnishing and receiving large amounts of freight, (and which it is not questioned it is customary for the defendant to do,) but that it would be inconsistent with

[1] Mitchell, J., was absent, and took no part in this case.

the necessities of the business of the company, and its plans for the extension and rearrangement of its tracks, "to give any special facilities on that ground." But it also appeared that such plans embraced the appropriation and use of the lot in question. If, however, it had not been arranged to condemn this lot, it does not appear, as matters stood when these proceedings were commenced, that it would have been impracticable or particularly inconvenient to have run tracks along, to, or upon a lot bounded, as this was, on three sides by lands of the company largely used for tracks.

It is a matter of common knowledge that in cities, where large amounts of grain and other bulky freight are received and forwarded, elevators, warehouses, etc., in addition to ordinary freight-houses, are indispensable in the vicinity of the railway tracks and stations. The adjustment of tracks, and the arrangements for handling freights, are naturally controlled and regulated by the necessities of business, and the mutual interests of carriers, warehousemen, and others. Eligible locations are, therefore, more or less in demand for such purposes, as the evidence tends to show the fact to be in this case, and it is but reasonable that such circumstances should more or less affect the market value of such property. There was no error, then, in the reception of the evidence. There is no reason why the jury should be misled by the statements of fact testified to, and, being advised of the facts, they would be able to judge of the value of the opinions of the witnesses, and how far the grounds thereof were substantial.

In *Sexton* v. *North Bridgewater*, 116 Mass. 200, the jury were permitted to consider the more advantageous uses to which property might be applied in consequence of the opening up of a new street; the question of fact, as to the likelihood of such advantages, being left to them. In *Fairbanks* v. *Fitchburg*, 110 Mass. 224, a witness was asked in a similar case, where a part only of his lot was taken, "What is the probable future use of your remaining land?" Rejected, because, as the court say, "it called for an opinion, not of the value, but of the probable future use of real estate; when, upon that question, facts could only be stated from which the jury might form an opinion." So, in this case, witnesses qualified to speak gave their

opinion of the market value of this lot, situated as it was at the time in question, and, among the grounds therefor, included, as an element tending to enhance such value, its location on the railroad line, in distinction from other lots not so situated, with whatever reasonable opportunity such location might afford for facilities for shipment of freight.

As to this matter, and the demand for such property, and its adaptation to and availability for different uses reasonably practical, and not remote or speculative, the jury would be entitled to judge. Any existing facts which enter into the value of the land in the public and general estimation, and tending to influence the minds of sellers and buyers, may be considered. *East Pa. R. Co.* v. *Hiester*, 40 Pa. St. 55; *Patterson* v. *Boom Co.*, 3 Dill. 465, 468; *Sherman* v. *St. P., M. & M. Ry. Co.*, 30 Minn. 229; *King* v. *Minn. Union Ry. Co.*, 32 Minn. 224. The nature of the testimony would not warrant the court in holding that, as a matter of law, the land was not at the time in question more valuable by reason of its favorable situation for railway business.

The court submitted the case to the jury under instructions, in the course of its general charge, in conformity with these views; leaving them to consider the question of value from the opinions of expert witnesses; testimony of sales, as shown by the cross-examination; the location and surroundings of the property; and also the question of the feasibility or reasonable probability of a track connection with the lot, as affecting the question of value, having reference to the situation and circumstances as they actually were at the time of the taking. The court also instructed the jury that there was no obligation on the part of the railroad company to furnish any special privilege to the owner of the land, and that if the business arrangements of the company were such that it was impossible to furnish such special privilege, then there would be no reasonable probability of obtaining such privilege, and the effect would be to lessen the value of the land. Thus far we think the charge of the court substantially correct in view of the situation of the case as presented by the evidence. As before stated, the issue made by the defendant's evidence was as to the practicability of a railway connection by a

track to or upon the lot, and not as to its willingness to make one if it were feasible and convenient.

But the court further instructed the jury that though the company might be unable at that time to grant the privilege, "yet no one could tell what the changes thereafter might be, and there might still be some additional advantages or value to the land in consequence of the expectation that some time those privileges might be granted." This we regard erroneous, and altogether too remote and uncertain to be the subject of calculation, or to be considered as an element of damage. If the lot had ceased to be an eligible location adapted to advantageous uses in connection with the railroad, the jury could not consider the possibility of future changes not then contemplated. *Brown* v. *Providence, etc., R. Co.,* 5 Gray, 35. The rule is thus laid down in *Boom Co.* v. *Patterson,* 98 U. S. 403, 408: "Exceptional circumstances will modify the most carefully guarded rule; but, as a general thing, we should say that the compensation to the owner is to be estimated by reference to the uses for which the property is suitable, having regard to the existing business or wants of the community, or such as may be reasonably expected in the immediate future." *Watson* v. *Milwaukee & M. Ry. Co.,* 57 Wis. 332, 353.

This portion of the charge was not, however, particularly excepted to. The exception to the charge by defendant was general "to so much of the charge as instructed the jury that they might consider the contiguity of the land to the railroad tracks, and the probability of acquiring special facilities by reason of that contiguity." As a portion of the charge on this subject was correct, the exception in this form is not available on appeal. *Rheiner* v. *Stillwater St. Ry. & Trans. Co.,* 31 Minn. 193.

Order affirmed.